1

2

3

4

5

6

7

8

9

10

11

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12  ALLEN WAYNE McDANIEL,                    ) | CV F 03 5418 SMS HC |
| 13                     Petitioner,             ) | ORDER DENYING PETITION FOR WRIT |
|                                                ) | OF HABEAS CORPUS |
| 14      v.                                     ) | [Doc. #1] |
|                                                ) | |
| 15  JULIO VALDEZ, Warden,                      ) | ORDER DIRECTING CLERK OF COURT |
|                                                ) | TO ENTER JUDGMENT |
| 16                     Respondent.             ) | |
| 17  _____ ) | |

18

19

20

21

22

23

24

25

26

27

28

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  The parties having voluntarily consented to exercise of Magistrate

Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1), by order dated August 13, 2003, this case was

assigned to the undersigned for all purposes, including entry of final judgment.

                         **PROCEDURAL HISTORY**[1]

        Petitioner is currently in the custody of the California Department of Corrections pursuant to

a judgment of the Superior Court of California, County of Kings, entered on September 5, 1995,

following his conviction by jury trial of sale of heroin in violation of Cal. Health and Safety Code

§ 11352(a) and sale of cocaine base in violation of Cal. Health and Safety Code § 11352(a). See

---

[1]This information is derived from the petition for writ of habeas corpus and Respondent's answer to the petition.

Exhibit A, Answer to Petition for Writ of Habeas Corpus (hereinafter "Answer"). The allegations that Petitioner had suffered two prior strike convictions within the meaning of Cal. Penal Code § 667(b)-(I) were found to be true. Id. Petitioner was sentenced to two consecutive indeterminate terms of 25 years to life. Id.

Thereafter, Petitioner filed a notice of appeal with the California Court of Appeal, Fifth Appellate District (hereinafter "5th DCA"). On June 26, 1997, the 5th DCA issued an unpublished opinion rejecting Petitioner's contentions; however, the 5th DCA denied the claim that the trial court erred in believing it did not have the discretion to strike the prior convictions without prejudice to Petitioner raising the claim to the trial court in a petition for writ of habeas corpus. Id.

Petitioner then filed a petition for writ of habeas corpus in the Kings County Superior Court. On August 9, 2000, the trial court granted the petition and held a Romero[2] hearing. On September 18, 2000, the trial court declined to strike Petitioner's prior convictions or set aside the sentence. See Exhibit B, Answer.

Petitioner filed a second appeal to the 5th DCA. On December 19, 2001, in an unpublished opinion the 5th DCA affirmed the judgment. See Exhibit C, Answer.

On January 30, 2002, Petitioner filed a petition for review with the California Supreme Court. See Exhibit D, Answer. On March 13, 2002, the petition was summarily denied without comment or citation to authority. See Exhibit E, Answer.

On March 14, 2003, Petitioner filed the instant federal habeas petition in the United States District Court for the Eastern District of California, Sacramento Division. By order of the Court dated April 10, 2003, the matter was transferred to the Fresno Division and received in this Court. Petitioner raises three purported grounds for relief: (1) "Counsel at Romero hearing was ineffective - made no meaningful argument in favor of leniency"; (2) "Court's denial of petitioner's Romero motion to strike the strikes as to at least one count was abuse of discretion"; and (3) "Petitioner's fifty years to life sentence was unconstitutional as cruel and unusual punishment." See pp. 5-6, Petition.

---

[2]People v. Superior Court (Romero), 13 Cal.4th 497 (1996).

1    On July 10, 2003, Respondent filed an answer to the petition.

2    Petitioner did not file a traverse.

3    **FACTUAL BACKGROUND**

4    The Court hereby adopts the facts as summarized by the 5th DCA in its opinions dated June

5    26, 1997, and December 19, 2001:

6    In November and December 1994, an informant, Bobby Evans, was working with the
Kings County Narcotics Task Force (Task Force). During this time period, Evans met

7    defendant while walking on the street in Hanford and defendant told Evans he could provide
him drugs. Based on this statement, Evans reapproached defendant on a street in Hanford, on

8    December 16, 1994. At the time, Evans was wearing a small radio transmitter and
microphone commonly referred to as a "wire," and had $60 which had been given to him by

9    officers in the Task Force to purchase drugs. Task Force officers were monitoring the
transmissions from Evans's "wire" and simultaneously recording them. Evans told defendant

10    he wished to purchase some heroin, and defendant made a telephone call to someone he
believed could provide it.

11

12    As a result of the telephone call, a car containing two females came to the street
corner where defendant and Evans were waiting and defendant approached the car with $40

13    Evans had given him. He returned with three small bindles and $10 in change. He gave the
change and two of the bindles to Evans, and kept the third for himself. Subsequent analysis

14    disclosed the two bindles received by Evans contained a total of .06 grams of heroin.
Although Evans's entire transaction with defendant was recorded, problems with the

15    equipment, outside noise sources, and interference from other transmissions, rendered much
of the recording unintelligible. To the extent possible, a transcript of the recording was made
and offered into evidence by defendant.

16

17    On the evening of December 22, 1994, Evans was again on the street in Hanford
attempting to buy drugs for the Task Force. As before, he wore a wire that was being

18    monitored by Task Force officers, and was in the process of attempting to purchase some
drugs from an unidentified individual when he was approached by defendant. Evans told

19    defendant he was trying purchase some cocaine base, commonly referred to as "crack" or
"rock." Defendant offered to assist Evans and told him they should go to another area he

20    referred to as the "gardens." Evans and defendant then got into Evans's car and began
driving. During this time, Take Force officers lost contact with Evans and the transmissions

21    from his wire. As they were driving, Evans would state street names out loud in the hope that
the officers monitoring his transmissions could follow him. At some point during the drive,

22    the Task Force officers once again began to receive transmissions from Evans's wire.

23    Defendant first directed Evans to a house where he believed they could get some
crack. However, it turned out the occupants did not have any. They then continued to drive

24    toward the "gardens." When they arrived in that area, they saw two people in the street, one
of whom was on a bicycle. Evans testified that when defendant saw the individuals he said,

25    "let's stop right here and see what they got." Evans stated that as they approached the
individual, he recognized the man on the bicycle as Willie Johnson, someone from whom he

26    had previously purchased drugs. Evans had a conversation with Johnson and gave him $20,
and in return received a piece of white substance. At defendant's request, Evans broke off a

27    piece of the substance and gave it to defendant. Subsequent analysis revealed that the white
substance Evans received contained .27 grams of cocaine base.

28    As was the case with respect to the December 16th tape, there were numerous gaps

1   and inaudible portions in the recording of the December 22d transaction. To the extent
2   possible, a transcript was prepared, including the name of the individuals who were speaking
    when their voices could be identified. The audio tape and transcript were offered into
    evidence and provided to the jury.

3   See pp. 2-4, Exhibit A, Answer.

4       *McDaniel's Romero Hearing*

5       At the beginning of McDaniel's Romero Hearing, the court stated that it had reviewed
6   the probation report, the letters attached to it, the information, and the jury verdicts. It then
    stated that McDaniel's case did not appear to be an appropriate case for striking any of
7   McDaniel's prior convictions but that [] it was inviting comments from counsel before
    making a final decision.

8       In responding to the court's comments defense counsel, in pertinent part, stated,
9
10          . . . All I can really offer is that we have two relatively benign convictions in
            this case, and I say 'relatively benign,' because I think relatively they're convictions
            for sales and being involved in drug sales. And it would seem to me that the sentence
11          of two 25 years to life terms based on those two counts would be disproportionate to
            the conduct involved, and we would argue that . . . .

12      In arguing against the court exercising discretion pursuant to section 1385, the
13   prosecutor noted that McDaniel's criminal record stretched back to 1976 and that he had been
     unable to curb his criminal behavior. At one point he referred to McDaniel as a "poster child"
14   for the three strikes law.

15      In refusing to strike any of McDaniel's prior convictions , the court stated,

16          The defendant has been found guilty by the jury [of] prior convictions that
            come within the provisions of Section 667, Subsections B and D, and [section]
17          1170.12 . . . that his life has been one of continued criminality throughout his adult
            life culminating in the offenses that resulted in the present convictions for the sale of
18          heroin and the sale of cocaine base. The defendant's pattern of behavior shown in his
            probation report indicates that the defendant is clearly a career criminal and addicted
19          to heroin and showing - - at least at the time of sentencing showing no interest or
            desire to change his lifestyle and obviously more involved in recruiting others through
20          his sales than to mending his own behavior.

21          The Court agrees that Mr. McDaniel is the epitome of the precipitous for
            whom the statute was enacted, and in the Court's view the indication of relief under
22          1385 . . . would be a gross miscarriage of justice. So in the interest of justice, I'm
            going to decline to extend relief under [section] 1385, and the sentencing orders that
23          were entered September 21, 1995, will stand as announced at that time.

24   See pp. 3-4, Exhibit C, Answer.

25                          **DISCUSSION**

26   **I.  Jurisdiction**

27      Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

28   to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

Constitution.  In addition, the conviction challenged arises out of the Kings County Superior Court,

which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly,

the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114

F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert.*

*denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997)

(holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was

filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70

(2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established

Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

*quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

1  of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly

2  established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

3  the Supreme Court at the time the state court renders its decision." Id.

4      Finally, this Court must consider whether the state court's decision was "contrary to, or

5  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

6  *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the

7  writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

8  question of law or if the state court decides a case differently than [the] Court has on a set of

9  materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

10  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

11  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

12  applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

13      "[A] federal court may not issue the writ simply because the court concludes in its

14  independent judgment that the relevant state court decision applied clearly established federal law

15  erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A

16  federal habeas court making the "unreasonable application" inquiry should ask whether the state

17  court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

18      Petitioner has the burden of establishing that the decision of the state court is contrary to or

19  involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

20  94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

21  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

22  decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th

23  Cir.1999).

24      AEDPA requires that we give considerable deference to state court decisions. The state

25  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

26  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537

27  U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

28

1   **III.  Review of Petitioner's Claim**

2         **A.  Ground One**

3        In his first ground for relief, Petitioner claims his defense counsel provided ineffective

4   assistance by failing to make a meaningful argument in favor of leniency at the Romero hearing.

5   Petitioner does not expound on his claim; however, assuming by "leniency" Petitioner is making the

6   same arguments as he did in state court, Petitioner asserts defense counsel was ineffective in the

7   following manner: (1) Failing to argue, in accord with the principles enunciated in <u>People v. Garcia</u>,

8   20 Cal.4th 490 (1999), that the court should have struck the prior conviction allegations as to one of

9   his current offenses; (2) Failing to argue the mitigating effect of certain circumstances; (3) Failing to

10  argue Petitioner's alcoholism as a mitigating factor; 4) Failing to correct the court's erroneous

11  assumption that Petitioner was involved in "recruiting" others to drug use; (5) Failing to argue the

12  basis for his statement that petitioner's sentence was disproportionate to his conduct; and (6) Failing

13  to object to the prosecutor's characterization of Petitioner as the "poster child" for California's Three

14  Strikes law.

15       The law governing ineffective assistance of counsel claims is clearly established for the

16  purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  <u>Canales v. Roe</u>, 151

17  F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas corpus alleging ineffective assistance

18  of counsel, the court must consider two factors.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687

19  (1984); <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that

20  counsel's performance was deficient, requiring a showing that counsel made errors so serious that he

21  or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Strickland</u>, 466

22  U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard

23  of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of

24  reasonable professional judgment considering the circumstances. <u>Id</u>. at 688; <u>United States v.</u>

25  <u>Quintero-Barraza</u>, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is

26  highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the

27  wide range of reasonable professional assistance.  <u>Strickland</u>, 466 U.S. at 687; <u>Sanders v. Ratelle</u>, 21

28  F.3d 1446, 1456 (9th Cir.1994).

1    Second, the petitioner must show that counsel's errors were so egregious as to deprive

2    defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must

3    also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's

4    ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356,

5    1461 (9th Cir. 1994).  To set aside a conviction or sentence solely because the outcome would have

6    been different but for counsel's error, may grant the petitioner a windfall to which the law does not

7    entitle him.  Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).   Thus, if the court finds that

8    counsel's performance fell below an objective standard of reasonableness, and that but for counsel's

9    unprofessional errors, the result of the proceeding would have been different, the court must then ask

10   whether despite the errors and prejudice the trial was fundamentally fair and reliable.  Id.

11   A court need not determine whether counsel's performance was deficient before examining

12   the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. at

13   697.  Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must

14   necessarily fail.  Ineffective assistance of counsel claims are analyzed under the "unreasonable

15   application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d 1058,

16   1062 (2000).

17   1. Failure to argue the Garcia principles

18   Petitioner first claims defense counsel was ineffective in failing to argue that the court should

19   strike one of the prior conviction allegations in accordance with the principles announced in People

20   v. Garcia, 20 Cal.4th 490 (1999).

21   California Penal Code § 1385(a) provides, in pertinent part:

22           The judge or magistrate may, either of his or her own motion or upon the application
             of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The
23           reasons for the dismissal must be set forth in an order entered upon the minutes.

24   In People v. Garcia, the defendant was convicted of two counts of burglary.  At sentencing,

25   the trial court exercised its discretion pursuant to § 1385(a) and struck one of the prior conviction

26   allegations. The California Supreme Court upheld the trial court's exercise of discretion and

27   reiterated the principles set forth in People v. Williams, 17 Cal.4th 148 (1998):

28           [In Williams] [w]e said that the trial court could give 'no weight whatsoever . . . to

factors extrinsic to the [Three Strikes] scheme.' On the other hand, the court must accord 'preponderant weight . . . to factors intrinsic to the scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects.' Ultimately, a court must determine whether 'the defendant may be deemed outside the scheme's spirit, in whole or in part.'

Garcia, 20 Cal.4th at 498-99 (Citations omitted).

In determining that the trial court's exercise of discretion was proper, the California Supreme Court noted the defendant's prior convictions all arose from "a single period of aberrant behavior for which he served a single prison term." Id. at 503. In addition, the defendant "cooperated with police, his crimes were related to drug addiction, and his criminal history does not include any actual violence." Id.

In this case, Petitioner suffered two prior convictions for robberies which were counted as strikes. These convictions did not stem from a single period of aberrant behavior; one occurred eight years later than the other, and Petitioner went to prison separately on each. See Exhibit C, Answer. The trial court found Petitioner's life to be "one of continued criminality . . . culminating in the offenses that resulted in the present convictions for the sale of heroin and the sale of cocaine base." Id. This finding is borne out by the fact that Petitioner had also sustained additional convictions: 1) a prior felony conviction for possession of a fraudulent check/money order; 2) a prior felony conviction for petty theft with a prior; 3) two misdemeanor convictions for creating a public disturbance; 4) one misdemeanor conviction for disorderly conduct; 5) one misdemeanor conviction for disobeying a court order; 6) one misdemeanor conviction for being under the influence of a controlled substance; and 7) several traffic violations which included reckless driving, driving under the influence, driving without a license, and resisting arrest. Id. The trial court further stated that Petitioner's "pattern of behavior shown in his probation report indicates that [he] is clearly a career criminal and addicted to heroin . . . showing no interest or desire to change that lifestyle and obviously more involved in recruiting others through his sales than to mending his own behavior." Id. This finding is demonstrated by the fact that Petitioner had served time on 11 separate occasions and had probation revoked on 4 occasions. Id. The trial court agreed that Petitioner "is the epitome of the precipitous for whom the statute was enacted, and in the Court's view the indication of relief

1    under 1385 . . . would be a gross miscarriage of justice." Id.

2        Therefore, Petitioner's claim that defense counsel failed to adequately argue the Garcia

3    principles fails. First, Petitioner has not shown counsel's actions to be erroneous. Counsel did argue

4    that the current convictions were "relatively benign" in that they involved drugs. Id. Counsel further

5    argued that the sentence was disproportionate to the conduct involved. Id. Based on the stark contrast

6    of the defendant's criminal history in Garcia to Petitioner's, additional argument on this point by

7    counsel would have been pointless. In addition, Petitioner cannot demonstrate prejudice. No matter

8    how strongly defense counsel would have argued the point, there is little or no chance the argument

9    would have swayed the trial court. In fact, as noted above, the trial court found that based on his

10   criminal history, granting Petitioner relief by striking a prior would have been a "gross miscarriage

11   of justice." Id.

12        2.  Failure to argue the mitigating effect of certain circumstances

13        Petitioner also faults counsel for failing to argue as mitigating circumstances that: 1) the

14   current offenses were closely connected in time; 2) they resulted from a continuing effort by

15   informant Evans to have Petitioner arrested; 3) neither sale was initiated by Petitioner; and 4) neither

16   sale was indicative of serious drug dealing by Petitioner.

17        Nevertheless, as found by the 5th DCA, the trial court was aware of the above factors by way

18   of the probation report. The trial court, however, viewed the circumstances differently. The multiple

19   sales, Petitioner's criminal history, and Petitioner's willingness to supply Evans with drugs

20   demonstrated a pattern of ongoing criminal conduct.

21        Therefore, counsel's failure to argue these mitigating circumstances was not erroneous, and

22   in any case, Petitioner cannot demonstrate prejudice. There is no chance additional argument would

23   have swayed the court.

24        3.  Failure to argue Petitioner's alcoholism as a mitigating circumstance

25        Petitioner alleges trial counsel failed to argue his addiction to alcohol as a mitigating

26   circumstance.

27        As noted by the 5th DCA and argued by Respondent, in California, alcoholism can be

28   regarded as an aggravated factor and not a mitigating factor when the problem is long-term and the

1    defendant makes no effort to pursue treatment. <u>People v. Gaston</u>, 74 Cal.App.4th 310, 322 (1999);

2    <u>People v. Martinez</u>, 71 Cal.App.4th 1502, 1511 (1999).  And in fact, the trial court did view

3    Petitioner's dependency as an aggravating factor. Therefore, counsel's decision not to argue the point

4    was not unreasonable.

5        <u>4.  Failure to correct the court's erroneous assumption that Petitioner was involved in</u>
         <u>"recruiting" others to drug use</u>

6

7        Petitioner claims the trial court erroneously assumed that Petitioner recruited others to drug

8    use. Petitioner alleges that defense counsel should have pointed out and corrected the trial court's

9    error.

10       The record shows that in both instances, Petitioner willingly procured drugs for informant

11   Evans by calling for others to supply the drugs and negotiating the drug deal.  Petitioner would

12   obtain a portion of the drugs for himself in exchange for his services. Based on these facts, the trial

13   court's assumption that Petitioner "recruited" others was reasonable.  And so, defense counsel's

14   failure to  correct this assumption was not error.

15       <u>5.  Failure to argue the basis for his statement that petitioner's sentence was disproportionate</u>
         <u>to his conduct</u>

16       Petitioner argues next that defense counsel failed to argue the basis for his statement that

17   Petitioner's sentence was disproportionate to his conduct.

18       As discussed below, Petitioner's sentence was not disproportionate to his conduct. Therefore,

19   defense counsel's failure to expound on his argument has not been shown to be error. In addition, the

20   outcome would not have been different but for defense counsel's alleged failure. Thus, Petitioner has

21   also failed to demonstrate prejudice.

22       <u>6.  Failure to object to the prosecutor's characterization of Petitioner as the "poster child" for</u>
         <u>California's Three Strikes law</u>

23       Lastly, Petitioner alleges defense counsel was ineffective in failing to object to the

24   prosecutor's comment that Petitioner was the "poster child" for the Three Strikes law.

25   The 5th DCA summed up McDaniel's criminal history as follows:

26

27           In addition to the two robbery convictions which were counted as strikes, defendant
         had a prior felony conviction for possession of a fraudulent check/money order; a prior felony
         conviction for petty theft with a prior; two misdemeanor convictions for creating a public
28       disturbance; one misdemeanor conviction for disorderly conduct; one misdemeanor

> conviction for disobeying a court order; one misdemeanor conviction for being under the influence of a controlled substance; and numerous traffic violations including reckless driving, driving under the influence, driving without a license and resisting arrest. As a result of these offenses, he served time in jail on 11 occasions and had his probation revoked at least 4 times. When he committed the present offenses, defendant was on probation for driving under the influence and resisting arrest.

See Exhibit C, Answer.

In light of this criminal history, the prosecutor's comments were fairly supported. Any objection by defense counsel would certainly have been overruled. In addition, Petitioner demonstrates no prejudice resulting from the comment.

### 7. Conclusion

In sum, Petitioner has not shown constitutional error as a result of any of defense counsel's alleged failures. Even if constitutional error can be shown, Petitioner has not shown the state court rejection of the claim to be an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, or a decision based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). The claim must be denied.

### B.  Ground Two

In his second ground for relief, Petitioner contends the trial court's denial of his Romero motion pursuant to Section 1385 to strike one of Petitioner's prior convictions was an abuse of discretion. Respondent argues the claim should be dismissed as it does not raise a federal question.

The basic scope of habeas corpus is prescribed by statute. Subsection (c) of Section 2241 of Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he is "in custody in violation of the Constitution." 28 U.S.C. § 2254(a) states:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*.

(emphasis added). See also, Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court. The Supreme Court has held that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . ." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

1    Furthermore, in order to succeed in a petition pursuant to 28 U.S.C. § 2254, Petitioner must

2    demonstrate that the adjudication of his claim in state court

3        resulted in a decision that was contrary to, or involved an unreasonable application
         of, clearly established Federal law, as determined by the Supreme Court of the
4        United States; or resulted in a decision that was based on an unreasonable
         determination of the facts in light of the evidence presented in the State court
5        proceeding.

6    28 U.S.C. § 2254(d)(1),(2).

7        In the instant case, Petitioner fails to state a cognizable federal claim.  Petitioner does not

8    allege a violation of the Constitution or federal law.  The instant claim only involves state law, and

9    generally, issues of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62,

10   67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of

11   state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333,

12   348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level

13   of a constitutional violation, may not be corrected on federal habeas"); Tinsley v. Borg, 895 F.2d

14   520, 530 (9th Cir.1990), *cert. denied*, 498 U.S. 1091 (1991) ("incorrect" evidentiary rulings are not

15   the basis for federal habeas relief); Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert.*

16   *denied*, 493 U.S. 942 (1989) (Federal courts are bound by state court rulings on questions of state

17   law).

18       Therefore, Respondent is correct in arguing the instant claim fails to raise a federal question.

19   The claim must be dismissed.

20   **C.  Ground Three**

21       In his last ground for relief, Petitioner claims his sentence of fifty years to life pursuant to

22   California's Three Strikes law is cruel and unusual punishment in violation of the Constitution.

23       A criminal sentence that is not proportionate to the crime for which a defendant is convicted

24   may indeed violate the Eighth Amendment.  The Supreme Court recently decided two cases which

25   discuss the clearly established federal law applicable to Eighth Amendment cruel and unusual

26   punishment claims.  See Ewing v.  California, 123 S.Ct. 1179 (2003); Lockyer v. Andrade, 123 S.Ct.

27   1166 (2003).

28       In Andrade, the Supreme Court discussed the current state of Eighth Amendment

U.S. District Court
E . D . California          cd                                    13

proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years. Id. at 1173. Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent path for courts to follow." Id.

The Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' frame work is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id.   The Court analyzed Andrade's sentence under Rummel v. Estelle, 445 U.S. 263 (1980), Solem v. Helm, 463 U.S. 277 (1983) and Harmelin v. Michigan, 501 U.S. 957 (1991), and held that the state court "did not confron[t] a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrive at a result different from our precedent." Id. at 1173-1174. Using section 2254(d)(1)'s "unreasonable application" clause, the Court also held that it was not objectively unreasonable for the California Court of Appeal to conclude that the contours of the gross disproportionality principle permitted an affirmance of Andrade's Three Strikes sentence. Id. at 1175.

In Ewing, the Supreme Court again reviewed the constitutionality of a sentence of 25 years to life for stealing three golf clubs.  After reviewing the Court's Eighth Amendment jurisprudence, the Court chose to adopt Justice Kennedy's view [3] that:

> [There are] four principles of proportionality review-- the primacy of the legislature; the variety of legitimate penological schemes; the nature of our federal system; and, the requirement that proportionality be guided by objective factors– that inform the final one: The Eighth Amendment does not require strict proportionality between the crime and the sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.

Ewing, at 1186-1187.

In conducting a proportionality review of Ewing's sentence, the Court stated, "[i]n weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his

---

[3] As expressed in his concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991), citing Solem v. Helm, 463 U.S. 277, 288 (1983).

long history of felony recidivism." Id. at 1189-1190.  The Court noted that "any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions."  Id. at 1190.  The Court recognized the state's interest in dealing "in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law."  Id., *citing* Rummel v. Estelle, 445 U.S. 263, 276 (1980).  Accordingly, proportionality review must take this interest into account. Id.  The Court held that Ewing's sentence of 25 years to life was justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by Ewing's long, serious criminal record.  Id.

In reviewing Petitioner's claim, this Court will begin with a brief overview of the Eighth Amendment jurisprudence and the proportionality standard which existed at the time of Petitioner's sentencing.  In Rummel, the Court upheld a life sentence imposed under a Texas recidivist statute for a defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by imprisonment for two to ten years.  Rummel, 445 U.S. at 266.  However, because he had two prior felony convictions (for fraudulent use of a credit card and passing a forged check), and had served two prior prison terms, the prosecution chose to proceed under the state's recidivist statute, which carried a life sentence.  Id.  The Supreme Court held that Rummel's sentence of life imprisonment *with* the possibility of parole did not violate the Eighth Amendment.  Id. at 265-266 (emphasis added).  The Court noted that Rummel had suffered two separate convictions and terms of imprisonment for each prior, that he would be eligible for parole in twelve years, and that under the Texas recidivist statute, prosecutors retained the discretion not to invoke the statute for "petty" offenders.  Id. at 278-81.

Three years later, the Supreme Court set forth the criteria for finding a sentence to be cruel and unusual punishment under the Federal Constitution and affirmed a decision of the Eighth Circuit holding unconstitutional a sentence of life imprisonment without the possibility of parole for a seven-time nonviolent felony recidivist.  Solem v. Helm, 463 U.S. 277 (1983).  Defining a three-part proportionality criteria, the Court concluded that Solem's sentence was grossly disproportionate to his crime of uttering a "no account" check for $100.00, even in light of his prior six nonviolent

felony convictions: three for third degree burglary, one for obtaining money under false pretenses, one for grand larceny, and one for driving while intoxicated.  Id. at 279-81.  The Court emphasized that Solem's life sentence was far more severe than the sentence it had considered in Rummel, because Rummel was likely to be eligible for parole in twelve years, while Solem was given no possibility of parole at all.  Id.

In Harmelin, the defendant received a mandatory sentence of life in prison *without* the possibility of parole for possession of more than 650 grams of cocaine, his first felony offense.  501 U.S. 957 (1991)(emphasis added).  The Supreme Court upheld the sentence, with five justices agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment.  Although the Court did not produce a majority opinion, seven justices favored some manner of proportionality review.  Justice Kennedy, joined by Justices O'Connor and Souter, stated that a noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to the crime, but concluded that courts need not examine the second and third factors of intrajurisdictional and interjurisdictional reviews discussed in Solem, unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."  Id. at 1005.

The majority of the justices in the Harmelin Court agreed that outside capital punishment, deeming a sentence cruel and unusual punishment is "exceedingly rare" due to the lack of objective guidelines for terms of imprisonment.  501 U.S. at 964.  The threshold for such an inference of disproportionality is high.  See id. at 1001 (Kennedy, J. concurring).  Generally, so long as the sentence imposed by the state court does not exceed statutory maximums, the sentence will not be considered cruel and unusual punishment under the Eighth Amendment.  United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990).

The Harmelin Court concluded that the defendant's sentence did not meet the threshold factor of "gross disproportionality."  Justice Kennedy stressed the serious nature of Harmelin's offense, stating that the offense "threatened to cause grave harm to society" unlike "the relatively minor, nonviolent crime at issue in Solem."  Harmelin, 501 U.S. at 1002.  Justice Kennedy further noted that the "possession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.'" and that the quantity of cocaine

1   possessed by Harmelin had a potential yield of between 32,500 and 65,000 doses.  Id.

2        Petitioner's sentence of 50 years to life does not raise an inference of gross disproportionality

3   to his crimes.  Petitioner received his total sentence for conducting two sales of controlled

4   substances. In Harmelin, Justice Kennedy noted that the "possession, use, and distribution of illegal

5   drugs represent 'one of the greatest problems affecting the health and welfare of our population.'" Id.

6   In addition, Petitioner received his lengthy sentence not just for the instant crimes, but also for his

7   extensive criminal history. As already discussed, Petitioner's criminal history included felony

8   convictions for robbery with use of a firearm, robbery, possession of a fraudulent check/money

9   order, and petty theft with a prior. In addition, Petitioner sustained multiple misdemeanor

10  convictions for creating a public disturbance, disorderly conduct, disobeying a court order, being

11  under the influence of a controlled substance, reckless driving, driving under the influence, driving

12  without a license, and resisting arrest.

13       In light of the instant drug offenses and Petitioner's extensive criminal history, Petitioner's

14  sentence does not raise an inference of gross disproportionality. The state court rejection of this

15  claim was not contrary to, or an unreasonable application of, clearly established Federal law, as

16  determined by the Supreme Court of the United States, nor did the state court resolution result in a

17  decision that was based on an unreasonable determination of the facts in light of the evidence

18  presented. See 28 U.S.C. § 2254(d). The claim must be denied.

19                                        **ORDER**

20       Accordingly, the petition for writ of habeas corpus is hereby DENIED.  The Clerk of Court is

21  DIRECTED to enter judgment for Respondent.

22

23  IT IS SO ORDERED.

24  **Dated:    May 3, 2005**                    **/s/ Sandra M. Snyder**
    icido3                                       UNITED STATES MAGISTRATE JUDGE

25

26

27

28